UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMARA A. WILFINGER,

    Plaintiff,                                       Case No. 08-11874
                                                Hon. John Feikens

v

ST. JOHN HEALTH, a Michigan Non-Profit
Corporation, and PAUL VAN TIEM,
an individual,

    Defendants.
_____/

## AMENDED ORDER OF DISMISSAL

Plaintiff Tamara Wilfinger was employed as the Vice President of Laboratory Services for Defendant St. John Health ("SJH"). As Vice President of Laboratory Services, Wilfinger oversaw SJH's laboratory services and reported directly to Defendant Paul Van Tiem, her supervisor. In May 2006, Wilfinger requested and received approval for a leave of absence from SJH due to a medical condition. During her absence, Wilfinger continued to receive full pay and full benefits from SJH. In August of 2006, SJH found that Wilfinger was managing a business known as "Wrap Me Slender" while on paid leave and that these management activities constituted a major violation of St. John's Leave of Absence Policies. SJH states that it terminated Wilfinger's employment on August 12, 2006, as a result of this violation.

Wilfinger alleges that Defendant Van Tiem fired her "for cause" on August 14, 2006, after calling her into his office. Wilfinger states that she demanded an appeal during this meeting, but that Van Tiem told her that she had no right to appeal.

At the time of her termination, Wilfinger was a participant in SJH's Capital Accumulation Account Plan for Vice Presidents (the "Plan"), and allegedly had over $40,000 earned in her deferred compensation account.  The only eligible participants for the Plan are System and Operating Unit Vice Presidents at SJH.  They qualify as a "select group of Management or highly compensated employees for purposes of ERISA."  Under the Plan, Vice Presidents, such as Wilfinger, were permitted to accumulate funds in an account to draw upon at retirement.  The account would accumulate during employment so long as the employee did not forfeit the account under one or more of the circumstances provided for in the terms of the Plan.  Specifically, the Plan includes a forfeiture of a participant's benefits if the employee is terminated from employment with SJH for "reasonable cause."  Also, the Substantial Risk of Forfeiture Agreement, which Wilfinger signed as a participant in the Plan, details that a participant forfeits his or her benefits under the Plan whenever they are terminated for cause.

The Plan also establishes a Claim and Review Procedure (Section 7.1 of the Plan) through which a participant can appeal a decision to deny Plan benefits.  Significantly, this Claim and Review Procedure requires a participant to follow certain procedures in order to perfect a claim for benefits or to request a review of a denial of benefits.  All claims for benefits must be submitted in writing.  Following the denial of a claim for benefits, a participant must submit a written request for review of the decision to deny benefits.  The participant must make such a written request within sixty days of the participant's receipt of notification of the denial

decision, and the request for review must "state with specificity" the basis for the review of the denial decision.[1]

After her termination, on August 17, 2006, Wilfinger submitted a written demand that SJH "initiate any internal grievance or appeal procedures to which she may be entitled." Wilfinger states that she intended this demand to formally trigger SJH's "Policy Guideline 520 – Associate Appeal Process" ("Policy 520") and to reverse the "for cause" termination status; however, Wilfinger states that SJH publicly announced her departure from SJH on August 18, 2006.

On August 28, 2006, SJH formally responded to Wilfinger's demand for an appeal under Policy 520. This response indicated that Wilfinger was not entitled to an appeal because SJH "does not provide a grievance process for executive management at the level of Vice President and above." On August 23, 2006, and September 11, 2006, Wilfinger debated this interpretation of Policy 520 with SJH Director of Worklife Services, Joanne Tuscany. Tuscany offered to have a corporate SJH representative meet with Wilfinger, but Wilfinger rejected this offer.

SJH's Corporate Director for Worklife Services, Mark Decker, sent Wilfinger a letter on September 1, 2006, addressing the issue of Wilfinger's benefits under the Plan. The letter stated the following:

> Based on our conversation of earlier this week, I have done some additional follow up and review of your inquiry regarding the status of the VP Capital Accumulation Plan. I was able to confirm that your termination from SJH is recorded as a "for cause" termination. Based on this, the assets held in the plan are subject for forfeiture. The

---

[1] Section 7.1 (Claim and Review Procedure) of the Plan states that it applies "[e]xcept to the extent provided in Section 7.2." However, the Plan contains no Section 7.2. The Plan's Table of Contents confirms this; it lists Section 7.1 as the only section in Article 7. Because Section 7.2 does not exist, it provides no exceptions to Section 7.1.

terms that can result in forfeiture [of] account balances in this program are identified on the attached Substantial Risk of Forfeiture Agreement. You signed this agreement on November 18, 2003.

All plan assets in this program remain an asset of St. John Health until they are fully vested. Based on the above, the liquidated account will be returned to St. John Health under terms set forth in the Substantial Risk of Forfeiture Agreement and Plan Documents.

On September 11, 2006, Wilfinger's attorney, Edward M. Nahhat, sent a letter to SJH Corporate Legal Services' representative and Senior Staff Attorney Laura Napiewocki. This letter requested the disclosure of the St. John Health Employee Grievance Policy and Process. The letter further stated:

Although your client asserts that there is no grievance procedure for executive management, we believe there is a grievance procedure in place and that it is not limited to non-executives. Please provide it to us without delay. Further, your proposal that Ms. Wilfinger may "meet" with Ms. Debra Williams is not an acceptable alternative to a grievance procedure. Please note that Ms. Wilfinger disputes the "for cause" status of her termination and further disputes the forfeiture of her deferred compensation.

It is important to highlight that Wilfinger disputes the forfeiture of her deferred compensation in this letter, but that she did not request a review of this forfeiture nor state with specificity the reason for requesting review.

On September 13, 2006, Napiewocki responded in writing to Nahhat's September 11 letter. This response included a copy of the Associate Appeal Process and indicated Napiewocki's intent to mail Nahhat copies of Wilfinger's personnel file the following week. Napiewocki's correspondence also stated the following:

You also have requested a copy of St. John Health's grievance policy, which I enclose. We respectfully disagree that your client has grievance rights under this policy. It is our position that this policy does not apply to executive management at the level of Vice President and above.

Wilfinger filed her Complaint in state court on March 11, 2008, stating causes of action for: wrongful termination for the breach of an implied employment agreement; wrongful termination for the breach of legitimate expectations; promissory estoppel; intentional infliction of emotional distress; tortious interference with contractual relationship or business expectancy; fraud; silent fraud; and breach of contract.  On May 2, 2008, Defendants removed the case to this Court.  Defendants argued that Wilfinger's state law claims sought to recover benefits under an employee benefit plan, and as such are preempted by ERISA.  Defendants further argued that because Wilfinger's employee benefit claims are preempted by ERISA, this Court has federal question subject matter jurisdiction over Wilfinger's Complaint.  On December 8, 2006, Wilfinger submitted a Motion to Compel Discovery.  This Court held a hearing on Wilfinger's motion on January 14, 2009, but did not issue a ruling.  Instead, this Court ordered the parties to submit briefs on the issue of whether this Court should dismiss Wilfinger's employee benefit claims due to a failure to exhaust administrative remedies.  The parties have submitted briefs in compliance with the Court's order.

## Analysis

**I) Failure to Exhaust Administrative Remedies**

Although ERISA does not explicitly require that a plaintiff exhaust administrative remedies before filing a court action under 29 U.S.C. § 32(a)(1)(B), the Sixth Circuit Court of Appeals has repeatedly held that a case should be dismissed if a plaintiff has failed to do so.  See Hill v. Blue Cross and Blue Shield of Michigan, 409 F.3d 710, 717 (6th Cir. 2005) (stating that "it is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim"); Coomer v. Bethesda Hospital, Inc., 370

F.3d 499, 504 (6th Cir. 2004) (stating that "[a]lthough ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action, we have held that '[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.'"). "The purpose of exhausting administrative remedies is to minimize the amount of frivolous ERISA suits, to promote the consistent treatment of claims, to limit the cost and time of settlement, and to provide a dispute resolution process that is not adversarial." Maple Manor Rehabilitation Center, L.L.C. v. Care Choices, 2006 WL 2130547, *5 (E.D. Mich. 2006).

      Here, Section 7.1 of the Plan requires that a participant follow specific procedures in order to trigger an administrative review of a benefits denial. In order to initiate the review process, a participant must file a written claim for benefits. Following notification of a denial of a claim, a participant must submit a written request for review of the decision to deny benefits within sixty days of the participant's receipt of notification of the denial of benefits. The request for review must state with specificity the reasons for requesting review.

      On September 1, 2006, SJH sent Wilfinger a written notice of denial of Plan benefits. After Wilfinger received this notice, she did not submit a written request for review. Thus, Wilfinger clearly did not exhaust her administrative requirements because she never requested a review of the denial of Plan benefits.

      Wilfinger argues that she exhausted the administrative review procedures available to her. She states that she did demand a review, but that it was in generalized form because she did not have a copy of the Plan. I find Wilfinger's argument unpersuasive. First, whether Wilfinger submitted a request for review in generalized form is irrelevant. As stated above, the Plan

requires that a Plan participant submit a written request for review that states with specificity the reason for requesting the review.  Generally or otherwise, Wilfinger never met this requirement.

Second, I find Wilfinger's argument that she was unaware of Plan requirements unpersuasive. Wilfinger was an SJH Vice President.  An employee of such status would not be unaware of the Plan or its requirements.  Also, Wilfinger signed a document on November 18, 2003, which stated: "I am a Participant in the St. John Health Deferred Compensation Plan."  By signing this document, Wilfinger acknowledged that she was aware of the Plan, and thus, the procedural requirements for the review of a benefits denial.  Finally, she was represented by an attorney no more than eleven days after receiving her notice of denial of Plan benefits.  Thus, I find that she was aware of the Plan requirements.  She cannot now use her failure to comply with these requirements as an excuse for failing to exhaust her administrative remedies.

Therefore, I rule that Wilfinger has failed to exhaust her administrative requirements.

**II) Futility**

Wilfinger also argues that her claim falls within an exception to the exhaustion requirement.  Specifically, she argues that the exhaustion requirement should not apply here because pursuing the available administrative procedures would be futile.  In Coomer, the Sixth Circuit explained that to establish futility, a plaintiff must show that it is certain that her claim would be denied if she engaged the administrative review process:

> Failure to exhaust administrative remedies is excused where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate.  The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made.  A plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.

7

370 F.3d at 505 (internal citations and quotation marks removed).

Wilfinger argues that pursuing administrative remedies would be futile because SJH never intended to review the decision to terminate her for cause. She states that "SJH made it clear, *before* it forfeited Wilfinger's deferred compensation, that she was *not entitled to any process that could challenge its decisions*." P's Brief in Support of this Court's Jurisdiction Over Plaintiff's ERISA Claim, at 11. Wilfinger's arguments here are unpersuasive.

Contrary to Wilfinger's allegations, the record indicates that SJH never stated that there was no procedure for the review of a denial of Plan benefits. SJH did state that there was no review process for the termination of her employment. But termination of employment and denial of Plan benefits are two separate issues. SJH never gave Wilfinger any indication that there were no review procedures for denials of Plan benefits and it never indicated that engaging in the benefit denial review process would be futile.

Thus, Wilfinger has not shown with certainty, as required by Sixth Circuit law, that her claim for Plan benefits would be denied on review. Because Wilfinger has not shown with certainty that her claim for Plan benefits would be denied upon administrative review, I find that Wilfinger's claim for Plan benefits does not fall within the futility exception. Therefore, I dismiss Wilfinger's claims for the recovery of Plan benefits due to her failure to exhaust administrative remedies.

**III) I Dismiss Wilfinger's Complaint in its Entirety**

I have dismissed Wilfinger's claims for the wrongful denial of Plan benefits, and, as a result, none of the remaining issues before this Court raise a federal question. Also, Wilfinger's Complaint does not assert a viable basis for diversity jurisdiction because the parties are not

diverse.  Under 28 USC § 1367(c)(3), having "dismisse[d] all claims over which it has original jurisdiction" this Court "may decline to exercise supplemental jurisdiction" over the remaining claims.  I have dismissed all claims over which this Court has original jurisdiction, and, as allowed by 28 USC § 1367(c)(3), decline to exercise jurisdiction over Wilfinger's remaining state law claims.  Therefore, I hereby dismiss the remainder of Wilfinger's Complaint.

## Conclusion

I DISMISS Wilfinger's Complaint, without prejudice, and remand all remaining state issues to Macomb County Circuit Court.

**IT IS SO ORDERED.**


Date:     April 13, 2009                    s/John Feikens
                                            United States District Judge


Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on April 13, 2009, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager